IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs October 13, 2015 at Knoxville

## ELLIS HARDIN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**Nos. F-70611, F-71193 & F-71194     Royce Taylor, Judge**

_____

**No. M2015-00494-CCA-R3-PC – Filed January 12, 2016**

_____

The petitioner, Ellis Hardin, appeals the denial of post-conviction relief from his 2014 Rutherford County Circuit Court guilty-pleaded convictions of aggravated sexual battery and attempted aggravated sexual battery, for which he received an effective sentence of 15 years. In this appeal, the petitioner contends that his guilty pleas were not knowingly and voluntarily entered and that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Kevin R. Bragg, Murfreesboro, Tennessee, for the appellant, Ellis Hardin.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Jennings Jones, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On April 23, 2014, the petitioner entered pleas of guilty to one count of the Class B felony of aggravated sexual battery and two counts of the Class C felony of attempted aggravated sexual battery, in exchange for a total effective sentence of 15 years' incarceration. The transcript of the guilty plea colloquy contains the following factual summary of the offense:

> [The petitioner] is here on three indictments. On Case Number F-70611, he is charged with two counts of aggravated sexual battery.

The facts of that case are in December of 2013, [the petitioner] did unlawfully and knowingly sexually contact a child under the age of 13 with the initials of ANB. Her name is actually in the indictment. So, he is aware of exactly who he is accused of touching. And this was in a sexual matter. . . .

This occurred in Rutherford County prior to the bringing of this indictment. The victim and the mother reported the offense to the police department. . . .

On that case he is pleading guilty to attempted aggravated sexual battery. Sentenced as a standard 30 percent offender. This case is going to be consecutive to F-71193 and F-71194.

Sentenced to TDOC for three years. . . .

. . . .

The next indictment will be F-71193. In this case, he is charged with one count of aggravated sexual battery.

And the facts of this case are the [petitioner] was a grandfather of a child, first initial D. The child stated that the grandfather touched him right here pointing to his genitals. And made a rubbing motion.

He stated that it was with his hand. He stated that it happened in the computer room. And [the petitioner] told him not to tell anyone.

He stated he reached down in his pants and grabbed his pee pee. And stated that he was five or six when it happened. He told his mom and that he was embarrassed.

This occurred in 2011 to 2012. And this is also involving a child who was under the age of 13 at the time. It occurred in Rutherford County prior to the bringing of the indictment.

On this case, [the petitioner] is charged with aggravated sexual battery. He is pleading guilty as charged. And he will serve eight years in jail at 100 percent as a standard offender.

. . . .

And in indictment Number 71194, the [petitioner] is charged with two counts of rape of a child.

The facts of that case are that between 2012 and 2013 in Rutherford County, the [petitioner's] granddaughter, first initial A, stated that [the petitioner] touched her on the inside with his finger. She stated it was sticky. She stated that he told her not to tell.

This happened two times. Once when she was four and once when she was five. [The victim] stated it happened in the computer room and in the living room on the couch. [The victim] stated that he told her not to tell every day. And that he never touched her anywhere but the privates.

She stated [the petitioner] is Grandma Judy's husband. And that she was taken to Grandma Judy's to be watched. She stated that this occurred approximately around Christmas when she was four years old. And it occurred again when she was five years old.

He is pleading guilty to one of those two counts. And for election, we will elect that this plea will refer to the count around Christmas when she was four years old.

And in this plea, he is charged with rape of a child. He's pleading guilty to a C Felony of attempted aggravated sexual battery. Sentenced as a standard 30 percent offender consecutive to F-71193.

Sentenced to TDOC for four years.

The guilty plea hearing transcript evinces that the trial court conducted a thorough

Tennessee Rule of Criminal Procedure 11(b) colloquy with the petitioner. In the colloquy, the trial judge confirmed the petitioner's knowledge of the nature and sentencing range of each charge, and the petitioner indicated his understanding of the potential sentencing. The petitioner also confirmed that he had consulted with trial counsel about his decision to plead guilty and that he freely and voluntarily made the decision to accept the plea agreement.

Two months after the entry of the plea agreement, the petitioner sent a letter to the trial court insisting that he had not committed the offense of aggravated sexual battery and that he had pleaded guilty on the advice of counsel. The trial court treated the letter as a claim for post-conviction relief and appointed counsel. Thereafter, the petitioner filed a timely petition for post-conviction relief, alleging that he was deprived of the effective assistance of counsel and that his guilty pleas were not knowingly and voluntarily made. On February 13, 2015, the post-conviction court conducted an evidentiary hearing.

At the evidentiary hearing, trial counsel testified that he was employed with the public defender's office and had been appointed to represent the petitioner on October 22, 2013. Although he could not recall with any specificity, trial counsel believed that he "probably" visited the petitioner at the jail between the time of his appointment and his April 2014 court date. Trial counsel admitted that he had not written any letters to the petitioner during his representation and that he was unaware of any letters that his office would have sent the petitioner.

Trial counsel recalled that he had engaged in "an on-going negotiation" with the State which resulted in the petitioner's plea agreement. Trial counsel felt confident that he had discussed each plea offer with the petitioner, stating that he had most likely reviewed the offers with the petitioner during court appearances. Although trial counsel could not recall if he had sent discovery materials to the petitioner, he was certain that he had reviewed all discovery materials with him. Trial counsel testified that, during one of his initial interviews with the petitioner, the petitioner had "expressed no interest in trying the case" and that a trial "seemed to be the last thing he wanted. And he was interested in negotiating a resolution." Because no need for trial preparation existed, trial counsel's representation primarily consisted of negotiating a satisfactory plea agreement.

Trial counsel did not recall speaking with any law enforcement officers or representatives from the Department of Children's Services. Counsel testified that his typical procedure with respect to plea agreements involved reviewing each page of the negotiated plea agreement with his client, explaining the charges, the plea, and the range of punishment for each charge. When a client entered a plea to a reduced charge, trial

counsel would explain the difference between the range of punishment for the charged offense and that to which the client was pleading. Trial counsel recalled that the petitioner was "fairly satisfied with the representation once it was concluded."

The petitioner testified that he was 79 years of age and had no prior criminal record. The petitioner stated that he met with trial counsel on a single occasion at the jail and that counsel merely asked the petitioner "how [he] wanted to work it out." The petitioner testified that trial counsel never explained the court system or judicial process to him and never explained the State's burden of proof or the elements of the charged offenses. The petitioner recalled that he only appeared in court twice, with both appearances in April 2014, and that trial counsel spoke with him for "[m]aybe 10 minutes." On the first court date, trial counsel presented the petitioner with a plea offer of 28 years, which the petitioner rejected. When trial counsel returned with a subsequent offer, he told the petitioner that if he accepted the plea offer, the State would not charge him with any additional crimes.

The petitioner stated that trial counsel never informed him that he would lose the right to vote and failed to explain to him the ramifications of lifetime community supervision. With respect to his discovery materials, the petitioner denied that trial counsel ever provided them to him, and the petitioner did not recall trial counsel's reviewing the materials with him. When shown a copy of the negotiated plea agreement containing his signature, the petitioner acknowledged his signature but stated that he never read the document before signing it and that he did not recall reviewing it with trial counsel. The petitioner testified that trial counsel had instructed him to plead guilty to the charges and that he did not understand the plea agreement proceedings.

In the post-conviction court's order denying post-conviction relief, the court found that the petitioner failed to prove ineffective assistance of counsel and failed to prove that his guilty plea was not knowingly and voluntarily made:

> From the beginning, [p]etitioner wished to settle the cases and avoid a trial. The [c]ourt finds that [trial counsel] explained the charges, the ranges of punishment, and the likely results of a trial to [p]etitioner. The [c]ourt finds that [p]etitioner accepted the State's offer, without force or pressure, according to his answers to the [c]ourt when he entered his plea. The [c]ourt finds [p]etitioner voluntarily accepted the State's offer in order to secure a sentence that allowed for the possibility of parole. Therefore, the [c]ourt finds that [p]etitioner has not met his burden for establishing that [trial counsel] was deficient.

Even if [p]etitioner had established that his counsel was deficient, he failed to establish that he was prejudiced by it. . . .

Petitioner was indicted for, among other things, two counts of Rape of a Child. As a result, he faced at least twenty-five years in prison at 100% for a single charge. By accepting the settlement negotiated by [trial counsel], [p]etitioner gained the possibility of parole in closer to ten years. At hearing, [p]etitioner averred that, even now, he does not want to go to trial. Rather, [p]etitioner claimed that he is innocent of the charges in Case F-71193, thus the [c]ourt should vacate his guilty plea and dismiss the charges, leaving [p]etitioner with a sentence of four years at 30% followed by three years at 30%.

Based on [p]etitioner's continuing desire to avoid a trial in this matter, the [c]ourt cannot say that, but for the errors of his counsel, [p]etitioner would not have entered the plea and would have gone to trial. Further, this [c]ourt cannot say that there is a reasonable probability that [trial counsel] could have obtained a better result for [p]etitioner, even if his alleged deficiencies were cured. The [c]ourt finds that [p]etitioner has not established that he was prejudiced by [trial counsel's] counsel.

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel and involuntary guilty pleas, claiming that trial counsel performed deficiently by failing to communicate with him and by failing to properly explain the plea agreement to him. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn.

Crim. App. 1997).  By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal.  *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984).  In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief.  *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).  Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted).  We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings.  *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).  Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily.  "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'"  *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)).  A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'"  *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

A claim of ineffective assistance of counsel is a mixed question of law and fact, *see Kendrick*, 454 S.W.3d at 457, as is a claim of involuntary guilty plea, *see Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. The record of the guilty-plea submission hearing and the explicitly accredited testimony of the petitioner's trial counsel evince the petitioner's understanding of the proceedings and his willingness to enter into the plea agreement in order to secure a reduced sentence which would allow for the possibility of parole. Moreover, the record fully supports the post-conviction court's determination that the petitioner failed to establish that he was prejudiced by trial counsel's representation.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE